## STROUSE v. UNION INDEMNITY CO.
### No. 24.

Circuit Court of Appeals, Second Circuit.
Nov. 13, 1933.

Edward G. Griffin, of New York City, for appellant.

Leo Levy, of New York City (Samuel L. Sargent, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff sustained an accidental fall which produced an indirect inguinal hernia, making necessary a surgical operation. For the resulting disability he claimed indemnity under a policy issued by the appellant insuring against the effects of bodily injuries caused directly and solely by accidental means. The insurer having disclaimed liability, this suit was brought in the District Court, whose jurisdiction is grounded on diverse citizenship. It was resisted upon two grounds: (1) That the plaintiff had failed to comply with provisions of the policy in respect to giving notice; and (2) that the policy was void from its issuance and had been rescinded by the defendant, with a tender of a return of the premium, because the plaintiff had falsely stated in his application for the insurance that he had never been ruptured. When the evidence was concluded, the defendant moved for dismissal of the complaint upon the two grounds stated above. The motion was denied, and the issues were submitted to the jury under instructions to which no exceptions were taken. They found a verdict for the plaintiff. Consequently the denial of the defendant's motion presents the only questions raised by this appeal.

Bearing upon the question of notice, reference must be made to the following provisions of the policy:

"4. Written notice of injury on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the Company.

"5. Such notice given by or in behalf of the Insured or Beneficiary, as the case may be, to the Company, at New Orleans, La., or New York, N. Y., or to any authorized agent of the Company, with particulars sufficient to identify the Insured, shall be deemed to be notice to the Company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

"6. The Company upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made."

The accident causing injury to the plaintiff occurred on August 15, 1929, while he was in the Canadian woods on a fishing trip. He returned to New York on August 26th, was examined by his family physician on the following day, and, on the 28th, by a surgeon, who told him that an operation was necessary. He went to a hospital on the 30th, and was operated upon on that day. Between his return and his operation he transacted some business at his office, but did not think to notify the insurance company of his accident. He remained at the hospital until October 28th. No written notice of the accident was given the insurance company until Adler's letter of September 18th. This was thirty-four days after the accident, and the company contends it was too late. It did not, however, take this attitude immediately. A few days after receipt of the written notice from Adler, the company's claim agent called upon the plaintiff and questioned him regarding the accident. Nothing was then said about the tardiness of his notice. On October 28th, the company wrote him a letter which declared that the policy was void because of false statements in his application for the insurance, and tendered a return of the premium he had paid. This letter made no mention of the failure to give timely notice.

In addition to the written notice and the company's conduct after the receipt of it, the plaintiff relies also upon an oral notification to Leo S. Adler whom the plaintiff attempted to prove to be an agent of the insurance company. Mr. Adler called upon the plaintiff at the hospital during the first week of September. He had heard that the plaintiff had met with an accident and called not only as a friend of the plaintiff but also because he was interested "to find out about his physical condition regarding a possible claim." The call occurred on either the 3d, 4th or 5th of September. It was not fixed more definitely. Adler was an insurance broker. He had an office, for which he paid no rent, in the insurance company's building. His telephone number was the same as the company's. He tendered on behalf of the company a return of the premium when the company's letter of October 28th declaring rescission was delivered to the plaintiff. He had solicited the

plaintiff's application for the insurance and his name appeared as "agent" of the company on the application. This bore the following heading:

"Application
"Union Indemnity Company
"Accident and Health Department
"Branch Office of General Agency
"Leo S. Adler. Address 100 Maiden Lane, New York."

At the end, following the plaintiff's signature, appears: "Agent: Leo S. Adler 100 Maiden Lane, New York City."

■■ In our opinion the foregoing facts, and particularly the company's retention of the application without any repudiation of Adler's agency, made a jury question as to whether he was not "an authorized agent" to whom notice of the accident could be given. A number of cases have recognized that it is some evidence of agency to have a person's name appear on the policy with the designation of agent. McArthur v. Home Life Ass'n, 73 Iowa, 336, 35 N. W. 430, 431, 5 Am. St. Rep. 684; Funk v. Anchor Fire Ins. Co., 171 Iowa, 331, 153 N. W. 1048, 1050; Wilson v. Commercial Union Assur. Co., 51 S. C. 540, 29 S. E. 245, 247, 64 Am. St. Rep. 700; Creech v. Mass. Bonding & Ins. Co. (Va.) 169 S. E. 545, 547; Standard Fire Ins. Co. v. Buckingham (Tex. Civ. App.) 211 S. W. 531, 534; Farber v. American Automobile Ins. Co., 191 Mo. App. 307, 177 S. W. 675, 680. In Hardin v. Alexandria Ins. Co., 90 Va. 413, 18 S. E. 911, 912, payment of rent by the company for one claimed to be only a broker and furnishing him with all needful papers are referred to as some evidence of agency. If there is any substantial evidence of agency, the question is for the jury. Lumbermen's Ins. Co. v. Bell, 166 Ill. 400, 45 N. E. 130, 57 Am. St. Rep. 140. We think there was enough in the case at bar.

■■ If the jury were entitled to find that Adler was an agent to whom notice could be given, then he could waive the requirement that it be given in writing. Weatherwax v. Royal Indemnity Co., 250 N. Y. 281, 286, 165 N. E. 293. It is true that paragraph 2 of the policy provides: " * * * No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon." But the weight of modern authority construes such clauses as referring only to provisions which enter into the contract of insurance and as not affecting conditions which are to be performed after loss, such as giving notice or furnishing proofs of loss. These may be waived either by express words or by conduct inconsistent with an intention to enforce a strict compliance with the conditions and calculated to lead the insured so to believe. Twin City Fire Ins. Co. v. Stockmen's Nat. Bank, 261 F. 470, 476 (C. C. A. 9); Alliance Ins. Co. v. Enders, 293 F. 485, 488 (C. C. A. 9); Home Ins. Co. v. Hightower, 22 F.(2d) 882, 885, 62 A. L. R. 620 (C. C. A. 5); Continental Ins. Co. v. Fortner, 25 F.(2d) 398, 402 (C. C. A. 6); Concordia Ins. Co. v. School District, 40 F. (2d) 379, 383 (C. C. A. 10); Vance, Insurance (2d Ed.) 781, 782. Contra, Scottish Union & Nat. Ins. Co. v. Encampment Smelting Co., 166 F. 231 (C. C. A. 8); Odegard v. General Casualty & Surety Co., 44 F.(2d) 31, 39 (C. C. A. 8). The New York decisions appear to be in accord with the majority view. Bishop v. Agricultural Ins. Co., 130 N. Y. 488, 496, 29 N. E. 844; Sergent v. Liverpool & L. & G. Ins. Co., 155 N. Y. 349, 355, 49 N. E. 935; Smaldone v. Ins. Co. of No. America, 162 N. Y. 580, 583, 57 N. E. 168. Cf. Weatherwax v. Royal Indemnity Co., 250 N. Y. 281, 286, 165 N. E. 293.

■ The second attack upon the judgment is based on the contention that the plaintiff falsely stated that he was physically whole, sound, and healthy and had never been ruptured, whereas in fact he had worn a truss for nearly thirty years. The application contained, among others, the following statements:

"18. I am in whole and sound and healthy condition mentally and physically, and have never been ruptured or suffered the loss of a hand, foot or eye, except as follows: No exceptions."

"20. I have not had during the past seven years, nor have I now any bodily or mental infirmity, defect or sickness except as follows: No exceptions.

"21. I have not during the past seven years been disabled nor received medical or surgical attention or advice except as follows: No exceptions."

At the trial the evidence disclosed that in 1899, while at college, the plaintiff had consulted a physician who had told him that he might have "a slight rupture" in the left groin, and had advised the wearing of a truss for thirty or sixty days. The plaintiff had procured a truss and had continued to wear one more or less continuously ever since, although other doctors who had subsequently

examined him for life insurance had declared that he had never had a hernia, or at least had none at the time of their examinations. It is now argued that the evidence shows that all three of the above-quoted statements were answered falsely; but the only defense pleaded was the falsity of statement 18. This issue was submitted to the jury and was found in favor of the plaintiff. There was expert testimony that the plaintiff could not have had a hernia in 1899, or at any time prior to August, 1929, in view of the active athletic life he had been able to lead, that the early protuberance might have been merely a swollen gland, and that the prescribing of a truss is not necessarily indicative of a hernia. Although the plaintiff had admitted in a prior application for other insurance that he had had a rupture, this was not conclusive. It was for the jury to determine whether the plaintiff's statement that he had never been ruptured at the date of his application for the policy in suit was true or false. Since there was evidence in support of their finding, it cannot be upset upon appeal.

Whether either of the other statements above quoted was false is not before us. This issue was not raised below by the pleadings, nor submitted to the jury by the charge, and no exceptions were taken to the charge for failure to submit it. It is too late to raise it for the first time here.

Judgment affirmed.