SAMUEL R. SHIELCRAWT et al., Suing on Behalf of Themselves and All Other Stockholders of Corn Products Refining Company and on Behalf of CORN PRODUCTS REFINING COMPANY, Plaintiffs, v. GEORGE M. MOFFETT et al., Defendants.

Supreme Court, Special Term, New York County, May 14, 1945.

*Walter A. Dane, Ralph M. Carson* and *Samuel A. McCain* for Corn Products Refining Company, defendant.

*I. Gainsburg, Samuel Gottlieb* and *Oscar Schlieff* for plaintiffs.

BOTEIN, J. When arguing the constitutional and retrospective aspects of section 61-b of the General Corporation Law upon its prior unsuccessful motion to require the plaintiffs to furnish security pursuant to the provisions of that New York statute, the corporate defendant urged that the law was procedural, while the plaintiffs asserted it was substantive. (See *Shielcrawt* v. *Moffett,* 49 N. Y. S. 2d 64, affd. 268 App. Div. 352, revd. 294 N. Y. 180.) This application is likewise made by the corporate defendant, a New Jersey corporation, for similar

relief under the recently enacted chapter 131 of the Laws of 1945 of the State of New Jersey (eff. Apr. 10, 1945),* which is substantially identical with section 61-b, except for an unequivocal expression of retroactivity. Now the defendant argues that both statutes are substantive, and that therefore the New Jersey statute, being the law of its domicile, governs, while the plaintiffs assert that both statutes are procedural and have no extraterritorial effect. I mention this only to point up the dangers inherent in affixing labels to certain areas of legislation without defining clearly their boundaries. The elusiveness of these labels is indicated by the nimbleness, albeit complete propriety, with which the parties now reverse their positions, and, in a manner of speaking, head for what were formerly their own goals.

Although both parties draw heavily upon it, the learned and comprehensive opinion of Chief Judge LEHMAN upon the preceding motion is not decisive herein as to the parties' respective characterizations of the New Jersey and New York legislation. The discussion as to the remedial, procedural and substantive aspects of section 61-b in that opinion was for a nonconflict purpose relating only to the retroactivity of that section, and is not determinative of the conflict of laws question with which we are here confronted. (Cf. *Sampson* v. *Channell,* 110 F. 2d 754.)

---

* Section 1 thereof provides as follows: "In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares of such corporation's stock of every class, exclusive of shares held in the corporation's treasury, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars ($50,000.00), the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter, from time to time, be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive." Section 3 states: "This act shall take effect immediately and shall apply to all such actions, suits or proceedings now pending in which no final judgment has been entered, and to all future actions, suits and proceedings." — [REP.

In this latter regard, it seems to me that a major concern is whether section 61-b is procedural in the sense that it is the type of statute which our courts may apply conveniently, practically 'and properly to foreign corporations doing business in this State to the end that our procedure shall maintain a desirable measure of uniformity in derivative stockholders' suits. I believe that section 61-b, and it must therefore follow, its New Jersey counterpart, are procedural in that sense. (Restatement, Conflict of Laws, § 585.)

I am aided in this determination by a reading of the pleadings. The wrong recited in the complaint was recognized as such under the laws of both New Jersey and New York in the year 1940, when this action was commenced, and is similarly recognized at the present writing. If, *arguendo*, the Court of Appeals had decided that section 61-b was retrospective and otherwise applicable to the instant case, and if the plaintiffs had furnished security or otherwise complied with that statute and proceeded to trial, the issues and governing law of New Jersey and New York would not differ in any respect upon a trial in 1945 from what had obtained in 1940, despite the above-mentioned intervening statutes enacted by both States.

It is interesting to note that the New Jersey enactment, which is avowedly patterned after section 61-b (see memorandum of Governor Edge, April 11, 1945), applies to " any action instituted or maintained in the right of any domestic or foreign corporation ". This would indicate an intention to regulate only the institution or maintenance of actions brought within the State of New Jersey, a conclusion which is bulwarked by the above-noted memorandum of Governor Edge, stressing the necessity of the new legislation " as a step in the direction of purging our courts of ' strike suits ', which abuse the judicial process." The Governor also stated that " No right of action will be barred " by virtue of the statute. This language would seem to indicate a primary concern with court processes, and a consequent intention that the law be remedial in nature.

The defendant corporation does business in this State. The Legislature clearly intended that section 61-b should apply with coequality to " any action instituted or maintained in the right of any foreign or domestic corporation ". The Court of Appeals has refused to give retrospective effect to section 61-b in the instant case, but in that decision made no distinction between foreign and domestic corporations in considering the applicability of the statute.

Therefore, aside from all other considerations, the words of Judge CARDOZO, confronted with an analogous situation in *German-American Coffee Co.* v. *Diehl* (216 N. Y. 57, 63–64) are determinative herein. He said: " As long as a foreign corporation keeps away from this state, it is not for us to say what it may do or not do. But when it comes into this state, and transacts its business here, it must yield obedience to our laws (*Sinnott* v. *Hanan*, 214 N. Y. 454, 458). For many purposes the fiction of its residence in the state of its origin must then be disregarded (*Lockwood* v. *U. S. Steel Corp.*, 209 N. Y. 375, 385; *St. Clair* v. *Cox*, 106 U. S. 350, 355). This statute makes no attempt to regulate foreign corporations while they keep within their domicile. It is aimed against them only while they elect to live within our borders. The duty which it imposes arises only when they come to us, and ends the moment that they leave us. Such a statute, however phrased, is in effect a condition on which the right to do business within the state depends [citing cases]."

The accident of chronology which renders section 61-b retrospectively inapplicable to this suit must not blink the fact that New York State has enacted a law designed to regulate within this State the same conditions which gave impulse to the New Jersey statute.

The motion is denied.